Albright v. Albright, 21 N. M. 606.

[No. 1833, May 1, 1916.]

## ALBRIGHT v. ALBRIGHT.

### SYLLABUS BY THE COURT.

1. In a suit instituted by a daughter against her father for the partition of the real estate owned by her mother, at the time of her death, she having died intestate, the uncorroborated evidence of the father is sufficient to sustain a finding by the trial court that the real estate, standing in the name of the wife at the time of her death, was community property. Section 2175, Code 1915, has no application to a suit between heirs for the partition of the real estate of their ancestor.

P. 612

2. Section 1087, C. L. 1884, and section 1509, C. L. 1897, which defined "separate property"· of the wife and further provided ·that, ·"and any * * *· woman may, during coverture, receive, take, hold, ·use, and ·enjoy property· of any and every description, and all avails of her industry, free from any liability of· her husband ·on account of his debts, as fully as if she were unmarried"· construed. Held, that the clause quot-

ed simply exempted the earnings of the wife from liability for the debts of the husband, and did not make the wife's earnings her own separate property. P. 614

3. Under sections 4169 and 4171, Code 1915, in every amendatory or supplemental pleading filed by a party, it is necessary for him to therein restate his entire cause of action, defense, or reply, and all matters set forth in his original pleading and not carried forward into his amended or supplemental pleading are abandoned, and a judgment for the defendant dismissing a cause on the merits is res adjudicata only as to such matters as were carried forward by a plaintiff into his amended or supplemental complaint.
P. 615

4. Without a judgment the plea of res adjudicata has no foundation and neither the verdict of a jury nor the findings of a court or referee, even though in a prior action upon the precise point involved in a subsequent action and between the same parties, constitute a bar. P. 621

5. Although admissions contained in a pleading of a party in a former action are admissible against him in a subsequent action between him and a stranger, the pleading does not conclusively establish the facts alleged therein, and is open to explanation or rebuttal. P. 622

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by Claude Albright against J. G. Albright and others. From a judgment for defendants, plaintiff appeals. Affirmed.

MARRON & WOOD of Albuquerque, for appellant.

Property having been conveyed to wife of appellee, burden was on appellee to establish that it was community property.
Sec. 2764, Code 1915.

Statute required testimony of appellee to be corroborated.

Sec. 2175, Code 1915; Childers v. Hubbell, 15 N. M. 450; National Rubber Co. v. Nadeau (unreported.)

The estate of the deceased wife of appellant was a vested estate and it is not within the rule that such interests can thus be changed.

Cooley Const. Lim. (6th ed.) 450-2.

Conveyance or gift by husband to wife creates separate property in wife.

Swain v. Duance, 48 Cal. 358; Hamilton v. Hubbard, 134 Cal. 603; Jones v. Humphreys, (Tex.) 88 S. W. 403; Stewart v. Kleinschmidt, (Wash.) 97 Pac. 1105; Alfertiz v. Arrivallaga, (Cal.) 77 Pac. 657.

Use and increase of wife's separate property and avails of her industry became and remained her separate property, the same as though she were unmarried.

Schouler Dom. Rel., sec. 113; sec. 1087, C. L. 1897; George v. Ransom, 15 Cal. 322; Harris v. Vandevanter, 50 Pac. 50; Strong v. Eakin, 11 N. M. 107.

It having been determined in the Ink Co. case that this property was the separate estate of Mrs. Albright, that question is therefore res adjudicata between these parties.

Black on Judgments, sec. 631; 23 Cyc. 1319; 14 Cyc. 1218.

As to what is a supplemental complaint, see:
21 Pl. & Pr. 79; 31 Cyc. 503.

If doctrine of res adjudicata does not apply, appellant is estopped by his conduct in Ink Co. case from asserting that property is community property.

Davis v. Wakelee, 156 U. S. 680; Luther v. Clay, 39 L. R. A. 95; 16 Cyc. 779-800; Territory v. Santa Fe Railroad, 10 N. M. 410.

Albright v. Albright, 21 N. M. 606.

A. B. McMILLEN of Albuquerque, for appellee.

There must be a judgment in order to constitute res adjudicata.

Oklahoma City v. McMaster, 196 U. S. 553.

Amended complaint superseded original complaint.
Sec. 4171, Code 1915; sec. 4172 id.

As to essentials of equitable estoppel, see:
Pomeroy's Eq. Jur., sec. 805.

·As to what is community property, see:
Strong v. Eakin, 11 N. M. 107; Brown v. Lockhart, 12 N. M. 10; Ballinger on Com. Prop., sec. 167; 21 Cyc. 1644; McKay Com. Prop., secs. 176-179.

Appellant's interest was mere expectancy which Legislature might change at will; but had her right been vested, Legislature would have had no such power.

Cooley's Const. Limitations (4th ed.) 445.

## OPINION OF THE COURT.

ROBERTS, C. J.—Claude Albright, the plaintiff in the court below, appellant here, is the only child of the defendant J. G. Albright and of Franc E. L. Albright, deceased. The mother died February 19, 1912, and this suit was instituted by the daughter against her father to partition certain property alleged to be the separate estate of the mother. Plaintiff alleged that the real estate described in her complaint was conveyed to her mother during her life by instrument in writing. The answer of J. G. Albright admitted that the property was conveyed to plaintiff's mother by instrument in writing, and denied each and every other allegation, and alleged that:

"All of said property was acquired by the said Franc E. L. Albright during the marriage relation existing between the said Franc E. L. Albright and this defendant, and was at the time that the same was conveyed to the said Franc E. L. Albright and at all times up to the time of her decease, com-

munity property of the marriage community composed of the said Franc E. L. Albright and this defendant."

The answer denies that the plaintiff had any right, title, or interest in and to said property, and prayed for a decree quieting title in favor of said defendant, J. G. Albright and against said plaintiff.

After trial of the issues, the court made the following findings:

"I.  That the defendant J. G. Albright was married to Franc E. Luce at Longton, Kan., in October, 1872, and that the said marriage relations continued until the death of the said Franc E. L. Albright in February, 1912, and that the plaintiff Claude Albright is the only child of the said J. G. Albright and the said Franc E. L. Albright, deceased.

"II.  That the said defendant J. G. Albright and his wife Franc E. L. Albright removed to New Mexico in the year 1880 and lived in New Mexico continuously in the relation of husband and wife until the death of Franc E. L. Albright and the said defendant J. G. Albright has ever since lived in New Mexico.

"III.  That at the time of the death of the said Franc E. L. Albright the real estate described in plaintiff's complaint stood in the name of the said Franc E. L. Albright, having been conveyed to her by instrument in writing.

"IV.  That all the real estate described in plaintiff's complaint was purchased between the 13th day of December, 1884, and the 22d day of July, 1898, and with the earnings and income of the said Franc E. L. Albright and J. G. Albright; that the said Franc E. L. Albright and J. G. Albright had but little property at the time of their marriage, and but little, if any, after paying their expenses to New Mexico in 1880; and whatever the said Franc E. L. Albright had under her control, if any, was put into a photograph business which she established in the city of Santa Fe, N. M., soon after coming to New Mexico.

"V.  That none of the real estate standing in the name of said Franc E. L. Albright at the time of her death was purchased by funds acquired by inheritance, donation, legacy, gift, bequest, device or descent.

### Findings of Law.

"The court finds as a matter of law that the property described in plaintiff's complaint was at the time of the death of said Franc E. L. Albright community property of the marriage community composed of the defendant J. G. Albright and the said decedent Franc E. L. Albright, and that upon the death of the said Franc E. L. Albright, the whole of said property descended to her surviving husband J. G. Albright, and that the plaintiff Claude Albright has no right, title, or interest in or to said real estate."

Final judgment, was entered in accordance with the findings of fact and law, and the plaintiff was found to have no right, title, or interest in or to said real estate described in the complaint, but the defendant J. G. Albright was decreed to be the owner of the whole of said real estate and his title was quieted against the claim of the plaintiff. From such judgment this appeal is prosecuted by the plaintiff.

The appellee J. G. Albright was married to Franc E. Luce, appellant's mother, at Longton, Kan., in October, 1872, which marriage relation continued until the death of the wife in February, 1912. Appellant was the only child. At the time of the marriage neither party thereto was possessed of much property; the wife having a small photograph gallery, and the husband a small tin and hardware business. Not long after they were married Mrs. Albright inherited a tract of 80 acres of Kansas land which was traded for a carload of sewing machines at a value of $500, which were sold or exchanged for cattle, horses, and other personal property, from which was realized, with the efforts of appellee, about $1,200, which was again invested in other property. Mr. and Mrs. Albright removed from Kansas to Santa Fé, N. M., in 1880. At that time they sold all of their property in Kansas, and after paying their debts had but very little money left. Mrs. Albright engaged in the photograph business in Santa Fé, and Mr. Albright in the newspaper business. The appellee was the only witness testifying in the case who pretended to know very much about the amount of money and property owned by the Albrights at the time they came to New Mexico, and how the little they had was acquired. He says it was very little and had been acquired by their joint efforts. After their removal to New Mexico the wife was very successful in the photograph business, and after their removal to Albuquerque in 1884 she invested in the real estate involved in this suit. All the real estate was acquired prior to 1907. During most of the time from 1880 until after the death of his wife, Mr. Albright engaged in the newspaper busi-

ness. During a portion of the time he says his business was very profitable, but eventually he was forced to dispose of his plant to satisfy his creditors, and the evidence shows conclusively that practically all of the money that was invested in the real estate was earned by the wife in the photograph business. If the evidence of J. G. Albright, the appellee, without corroboration, afforded substantial evidence of the fact that the real estate was purchased by earnings of the wife, earned while the marriage relation existed, then the findings and judgment of the lower court must be upheld here, unless by chapter 14, Laws 1884, compiled as section 1087, C. L. 1884, and section 1509, C. L. 1897, the earnings of the wife were made her separate estate.

[1] By section 10, chapter 37, Laws 1907, it was provided, among other things:

"But whenever any property is conveyed to a married woman by an instrument in writing the presumption is that title is thereby vested in her as her separate property."

Because of this statute appellee assumed the burden of proof in the trial court upon the theory that the above statute was only a rule of evidence; that the presumption which had theretofore existed that all property found in the name of either spouse during marriage was prima facie common could be changed, at will, by the Legislature, without affecting any vested rights. Both parties seemingly concur in this rule; hence we are not required to decide whether he rightly assumed the burden. McKay, in his book on Community Property, in discussing this presumption, says:

"The rule as thus stated is something more than a mere rule of evidence; it becomes a rule of substantive law—of property right. Under the rule in this form—and this is the form in which it is actually administered—the ownership of everything in possession of either spouse during marriage rests upon a basis more firm than a mere presumption; it is common unless a better separate right can be satisfactorily shown. This is a rule of property law, not of evidence merely; the apparent ownership of all property may be modified by proof of rights in others."

See, also, Jordan v. Fay, 98 Cal. 264, 33 Pac. 95; Gwynn v. Dierssen, 101 Cal. 563, 36 Pac. 103; Lewis v. Burns, 122 Cal. 358, 55 Pac. 132; Svetinich v. Sheean, 124 Cal. 216, 56 Pac. 1028, 71 Am. St. Rep. 50.

The rule referred to by the author in the above quotation is stated by him at section 255 as follows:

"All property found in the name or possession of either spouse during marriage is prima facie common. This presumption begins the moment of marriage and continues till the marital partnership is dissolved."

Appellant contends, however, that section 2175, Code 1915, applies to the appellee in this case, and that his evidence was not sufficiently corroborated to warrant the findings and judgment. The section in question reads as follows:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

This section of the statute has frequently been considered by the territorial and state Supreme Court, and the cases discussing it will be found collected in the recent case of National Rubber Supply Co. v. Oleson & Exter, 20 N. M. 624, 151 Pac. 694. See also the case of Union Land & Grazing Co. v. Arce, 152 Pac. 1143 (21 N. M. 115.) If the statute applied to this case, we would be required to hold that the testimony of the appellee was not sufficiently corroborated to warrant his recovery. But the statute does not apply. This is not a suit to establish any claim against the estate or against the heirs of the estate, but for the partition of real estate. Clearly this statute has no application to a suit between heirs for the partition of the real estate of their ancestor. The defendant Albright is an heir in any view of the case, as will be seen from the admission in plaintiff's complaint in which she sets out that he is entitled to inherit an undivided one-fourth

interest, upon the theory that the property in question was separate property of the decedent. If the property is community property he takes all, and Claude Albright is not an heir as to that property.

"In its primary sense 'heir' means a person who inherits or may by law inherit; such of the offspring or issue as may by law inherit; a person who succeeds to the estate of a decedent under the statutes of a country." 21 Cyc. 411.

It is clear that the defendant is not within the terms of the statute. He is not an opposite or interested party against the heirs, etc., He *is* the heir.

[2]. Appellant contends that from 1884 until 1901 and probably until 1907 the use and increase of the wife's separate property and the avails of her industry became and remained her separate property, the same as though she were unmarried. That such was not the rule under the civil law is not disputed, but appellant's argument is based upon the provisions of section 1, c. 14, Laws 1884, compiled as section 1087, C. L. 1884, and section 1509, C. L. 1897. The section reads as follows:

"All property, real, personal and mixed, and choses in action, owned by any married woman, or owned or held by any woman at the time of her marriage, shall continue to be her separate property, notwithstanding such marriage, and any married woman may, during coverture, receive, take, hold, use and enjoy property of any and every description, and all avails of her industry, free·from any liability of her husband on account of his debts, as fully as if she were unmarried."

Appellant places an unwarranted construction upon the latter portion of such section. In the first portion of the section the Legislature clearly defines what shall constitute the separate property of the wife. By the latter portion it intended to and did give the wife the right to "receive, take, hold, use and enjoy property of any and every description and all avails of her industry, free from any liability of her husband on account of his debts, as fully as if she were unmarried." In the "community property" states it is not uncommon to find legislative enactments exempting the earnings of the wife from the

debts of the husband, but, in so far as we are advised, it has never been held that such an exemption constituted such earnings the separate property of the wife.

By chapter 37, Laws 1907, an act "in relation to property rights of husband and wife" was passed, which act repealed the section in question. Section 8 of said act (section 2757, Code 1915) defined "separate property of the wife." By section 12 of said act it was provided that "the earnings of the wife are not liable .for the debts of the husband." It might be argued, with as much logic, that this section made the earnings of the wife separate property, as that section 1 of chapter 14, Laws 1884, accomplished this result.

Under the Civil Law of Spain and Mexico all the property of whatever nature which the spouses acquired by their own labor and industry belonged to the community. See note to section 171, McKay on Community Property. The same author, at section 172, says:

"In some of the states the wife's earnings are exempted from liability for the husband's debts. Where the statute goes no further than to exempt the wife's earnings, it is the better opinion that her earnings remain common property, and it would follow that they are under the dominion of the husband as the head of the marital partnership and the manager of the common fund, but are exempt from being taken by compulsory process in satisfaction of debts contracted by him."

If the Legislature had intended that the wife's earnings should become and remain her separate property it could easily have said so, and had it done so there would have been no necessity for the provision that such earnings should be free from "any liability of her husband on account of his debts."

[3] Appellant next argues that if the statute, just considered, does not make the earnings of the wife separate property, nevertheless, in so far as appellee is concerned, this question is res adjudicata. This contention arises out of the following facts:

In 1895 appellee became involved in financial difficulties and sold his newspaper business. He failed to realize

from the sale sufficient funds to pay all his obligations, and one of his creditors, the Queen City Printing Ink Co., in 1895, recovered a judgment against him in the district court of Bernalillo county. Thereafter, in 1897, an execution which it had caused to issue was returned nulla bona, whereupon it instituted a suit in the nature of a creditor's bill against the appellee and his wife, Franc E. L. Albright, in which, by appropriate allegations, it alleged that all the real estate, standing in the name of Mrs. Albright, being the same real estate now in question, was community property. The prayer of the complaint was that such real estate be subjected to the payment of the judgment. Albright and his wife, by separate sworn answers, both denied the allegations of the complaint, and alleged specifically that the real estate in question was the separate property of the wife. The cause was placed at issue and a referee was appointed to take the proofs and report findings, etc. After hearing the evidence, the referee, on the 21st day of March, 1898, made findings of fact to the effect that the various pieces of property described in the complaint, with the exception of one lot or tract, conveyed by Albright to his wife, were bought and paid for "out of the separate funds of the said Franc E. L. Albright, and was her sole and separate property."

The one piece of property so conveyed by J. G. Albright to his wife, the referee ruled was without sufficient consideration and void as to creditors; but it appearing that this property had been deeded by Mrs. Albright to her daughter, the plaintiff, Claude Albright, and that she in turn had deeded it to one William S. McGill, neither of whom were parties to the cause, the court refused to apply that property to the payment of the plaintiff's judgment. The Ink Company thereupon obtained leave of the court to file an amended and supplemental complaint in which Claude Albright, the plaintiff herein, and William S. McGill were named as defendants. This amended and supplemental complaint was filed June 25,· 1898, alleging that the transfer of the piece of property in question was without consideration and fraudulent and made for the

purpose of preventing the plaintiff from collecting his judgment. To this amended and supplemental complaint the defendant J. G. Albright filed an answer in which "he disclaims any and all interest whatsoever in the controversy between this plaintiff and the defendants herein, save to state and deny that he sold and conveyed the said property described in plaintiff's complaint to Franc E. L. Albright without consideration, but alleges that said transfer and conveyance was made in good faith and for adequate and valuable consideration." Mrs. Albright likewise filed an answer that the conveyance was in good faith and for a valuable consideration, as did likewise the defendant Claude Albright, who is the plaintiff in this cause.

The issues joined by the supplemental pleadings were then tried and determined adversely to the plaintiff, and final judgment was entered adjudging:

"That this cause be and the same is hereby dismissed, and that the plaintiff take nothing by his writ herein, and that the defendants and each of them go hence without day."

In order for the judgment in the Ink Company case to be res adjudicata, it is essential that said judgment should have determined the question as to whether the property was or was not the separate property of the wife.

Appellee contends that the original complaint in that case was superseded by the amended complaint, and that under such amended complaint the only issue presented and tried was the question as to whether Albright had transferred the Copper avenue property, in fraud of his creditors. Appellant concedes that this was the only issue presented in the last amended or supplemental complaint filed by the Ink Company, but says that this pleading was simply a supplemental complaint, and had no effect upon the issues theretofore framed, upon which the report of the referee was based.

The following text, from volume 21, Ency. Pl. & Pr. 79, is cited in support of the argument:

"A supplemental complaint is not like an amended complaint, a substitute for the original complaint, and does not supersede the original complaint, but it is a further com-

plaint and assumes that the original complaint is to stand and the issues joined under the original pleadings remain as issues to be tried in the action."

The usual Code provision, relative to supplemental pleadings, is found in the following language:

"The court, may, on motion, allow supplemental pleadings showing facts which occurred after the former pleadings were filed."

The New York Code, however, permits a party to also set up facts, in supplemental pleadings, which were unknown to him at the time his original pleading was filed, and some other states likewise have this further provision. Appellee assumes that in a supplemental complaint a party is not required to restate his entire cause of action, but argues that the pleading now under consideration was an amended complaint, rather than a supplemental complaint; hence that it superseded the original.

Under our Code provisions, however, it is wholly immaterial whether the last complaint filed by the plaintiff in the Printer's Ink Company case was an amended or supplemental complaint; for, in either event the plaintiff must be held to have abandoned all the allegations in his original complaint, not carried forward into his amended or supplemental complaint. Under the ordinary Code provisions, effective in a majority of the states, this would not be true as to a supplemental complaint, but the provisions of our Code seem to be peculiar to New Mexico and Missouri, from which state our statute was taken. The question is governed by sections 4169, 4171, and 4172, Code 1915, which read as follows:

"Sec. 4169. A party may be allowed, on motion, to make a supplemental complaint, answer or reply, alleging facts material to the cause, or praying for any other or different relief, order or judgment."

"Sec. 4171. In every complaint, answer or reply, amendatory or supplemental, the party shall set forth in one entire pleading all matters which, by the rules of pleading, may be set forth in such pleading, and which may be necessary to the proper determination of the action or defense.

"Sec. 4172. The last section shall not be construed to require an amendatory or supplemental pleading to be made where the amendment desired may be made by striking from the pleading portions thereof, or by adding or striking out the name of a party, or dates, or·adding or filing of an affidavit, or by correcting the name of a party or obvious errors."

Under section 4169 supra, it will be observed that a party may, by a supplemental complaint, answer or reply alleged facts material to the cause, and this he may do regardless of whether such facts occurred after the former pleading was filed or not, or whether such facts were known to him at the time he filed his former pleading.

By the next section quoted the pleader is required to set forth "in every complaint, answer, or reply, amendatory or supplemental, in one entire pleading all matters which, by the rules of pleading, may be set forth in such pleading."

The language of this section would seem to require the pleader, upon filing a supplemental, as well as an amendatory, pleading, to restate his entire cause of action, but, however ·this may be, as the statute was copied from Missouri, and had been construed by the Supreme Court of that state before we adopted it, "it is familiar law that in adopting the Missouri statutes we also adopt the construction put upon them by the Supreme Court of that state." Bremen Mining Co. v. Bremen, 13 N. M. 111, 79 Pac. 806.

In the case of Ward v. Davidson, 89 Mo. 445, 1 S. W. 846, a case decided in 1886 (our Code provision having been adopted in 1897), the Supreme Court held, in considering the parent statute, that:

"The amended or supplemental petition must set forth all the facts, so that there will be but one pleading."

The court in discussing the question said:

"The amended petition upon which the issues were made and tried states that the breaches of trust complained of were then still continued. In equity practice amendments to bills generally related to matters existing at the time of filing the first bill, and matters occurring thereafter were brought upon

. the record by supplemental bill.    2 Dan. Ch. Plead. and Pr.
(5th Ed.) 1516, and notes.    Our practice act recognizes the
right to bring before the court matters arising after the
filing of petition.    Sections 3535, 3573, R. S.    The amended
or supplemental petition must set forth all the facts, so that
there will be but one pleading.    Section 3576.    The new mat-
ter here pleaded simply enlarged the extent of the relief,
by stating a continuation of the same wrong, and was proper
supplemental matter.    Story Eq. Plead. par. 336; Jaques v.
Hall, 3 Gray (Mass.) 194.    The accounting, in respect of sal-
aries, will go to the date of filing the amended and supple-
mental petition.    Beyond that we are not asked to go."

This holding has never been departed from by the
Missouri court.    In numerous cases the Supreme Court of
that state treats an amended pleading and a supplemental
pleading in exactly the same light.    See the following
cases:  Basye v. Ambrose, 28 Mo. 39; Davis v. Clark, 40
Mo. App. 515; Reyburn v. Mitchell, 106 Mo. 365, 16 S.
W. 592, 27 Am. St. Rep. 350; Nave v. Adams, 107 Mo.
414, 17 S. W. 958, 28 Am. St. Rep. 421; Childs v. K. C.,
St. J. & C. B. Ry. Co., 117 Mo. 414, 23 S. W. 373;
Cohn v. Souders, 175 Mo. 455, 75 S. W. 413.

In the case of Alfter v. Hammitt & Morrison, 54 Mo.
App. 303, the court said:

"The cause of action being complete when the suit was
brought and the continuing damages flowing from the one
cause of action, according to our ruling in Cook v. Redman,
45 Mo. App. 397, could be recovered in one suit only.    The
meaning of this is as we think that when other and ad-
ditional actionable facts of the same kind and belonging to
the same group and cognate to those constituting the cause
of action stated in the original petition have come into ex-
istence since the commencement of the suit they may be
brought on the record by an amended and supplemental
petition, and we may infer that nothing more than this was
accomplished by the amended and supplemental petition in
this case."

In the case of Ticknor v. Voorhies, 46 Mo. 110, the
court said:

."Under this statute (referring to a Code provision identical
with our section 4171) the defense must be confined to the
matters alleged in the defendant's final pleading.    By filing
this pleading and going to trial upon it, he abandoned his
first answer and the matters therein alleged, which were
not restated in the answer as amended."

See, also, Young, Woolfolk's Adm'r, v. Woolfolk, 33 Mo. 110.

The same rule, while not expressly declared, was recognized by the territorial Supreme Court in the case of Leusch v. Nickel, 16 N. M. 28, 113 Pac. 595. The court said:

"The filing of this supplemental complaint had the effect of disposing of the demurrer filed to the original complaint inasmuch as the same was not renewed as to the supplemental complaint so far as the record shows."

Under the above authorities we are required to hold that in every amendatory or supplemental pleading, filed by a party, it is necessary for him to therein restate his entire cause of action, defense, or reply; that all matters set forth in his original pleading and not carried forward into his amended or supplemental pleading are abandoned; and that a judgment for the defendant, dismissing a cause on the merits, is res adjudicata only as to such matters as were carried forward by a plaintiff into his amended or supplemental complaint. This being true, the only matter litigated in the Ink Company case was as to whether a designated tract of real estate had been conveyed in fraud of the rights of creditors, and hence such judgment would only be res adjudicata upon that question.

[4] It cannot be claimed, with any degree of logic, that the report of the referee, finding that the property mentioned in the original complaint was the separate property of the wife, which report was never carried into the judgment, was res adjudicata. The leading case upon the point that a judgment is necessary to constitute res adjudicata is that of Oklahoma City v. McMaster, 196 U. S. 533, 25 Sup. Ct. 325, 49 L. Ed. 587, and the court there says:

"It is plain that there has been no formal judgment entered in the case, and that these two separate documents, filed in different clerk's offices, cannot be pieced together and made a formal and complete judgment. Without a judgment the plea of res judicata has no foundation; and neither the verdict of a jury nor the findings of a court, even though in a prior

action, upon the precise point involved in a subsequent action, and between the same parties, constitute a bar."

See, also, Bigelow on Estoppel (6th ed.) pp. 52 and 64; 23 Cyc. 1227, and cases cited.

[5]    Appellant next argues that:

"Even if we assumed that the question was not res adjudicata the plaintiff is barred and equitably estopped by his conduct in the Ink Company case from asserting that the property in question is community property."

This contention is based upon the fact that in the Ink Company case appellee filed a sworn answer, and likewise testified upon the hearing before the referee that the property standing in the name of his wife was her separate property.

In Tennessee it is held that a person making a solemn admission under oath in a judicial proceeding, such as is contained in a sworn pleading, is estopped thereby in a subsequent action with a stranger, unless he shows that the admission was made inconsiderately and without full knowledge of the facts. Stephenson v. Walker, 8 Baxt. 289; Chilton v. Scruggs, 5 Lea, 308. See, also, Stillman v. Stillman, 7 Baxt. 169; Cooley v. Steele, 2 Head, 605; M'cEwen v. Jenks, 6 Lea, 289; Watterson v. Lyons, 9 Lea, 566; Lee v. Calvert (Ch. App.) 57 S. W. 627.

But the Tennessee doctrine finds no support in other courts, so far as we are advised, and is certainly contrary to the accepted understanding of the necessary elements of an equitable estoppel. Mr. Pomeroy (Pomeroy's Equity Jurisprudence, § 805 et seq.) says that to constitute equitable estoppel the following elements must be present:

"1.    There must be conduct (acts, language or silence) amounting to a representation or concealment of material facts.

"2.    The facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to nim.

"3.    The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him.

Albright v. Albright, 21 N. M. 606.

"4. The conduct must be done with the intention, or at least with the expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.

".5. The conduct must be relied upon by the other party, and thus relying he must be led to act upon it.

"6. He must in fact act upon it in such manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forgo or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it." Pomeroy's Equity Jurisprudence. par. 805, et seq.

There are at least three of these elements wanting in the present case. Even under the contentions of appellant she was not misled; she did not rely upon it, and she did not act upon it in such a manner as to change her position for the worse; she had no interest in the property and could have had no possible interest prior to her mother's death under any view of the case.

The admissions contained in the former answer verified by appellee and filed in the Printer's Ink Company case were properly received as evidence in the present case, but such sworn answer was not conclusive and went only to the weight of his evidence in the present case. Such palpable false swearing would have justified the court in absolutely disregarding his testimony in the present case, but he was not bound to do so. The weight to be given to his testimony was a question which the trial court was required to determine. If it afforded substantial evidence to support the findings of the trial court, such findings are conclusive on appeal. Badaracco v. Badaracco, 10 N. M. 761, 65 Pac. 153; Gale & Farr v. Salas, 11 N. M. 211, 66 Pac. 520; Romero v. Coleman, 11 N. M. 533, 70 Pac. 559; Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735; Marques v. Land Grant Co., 12 N. M. 445, 78 Pac. 40; Richardson v. Pierce, 14 N. M. 334, 93 Pac. 715. In Jones on Evidence, § 274, the author says, in discussing admissions made in former suits:

"But a tacit or incidental admission in one suit will not conclude the party making it in another action, where precisely the same matter is not in litigation; and even then admis-

sions which are expressly made by the pleadings in one action are not conclusive in other suits, unless the second action is brought on a judgment recovered in the first. The affidavits and depositions of a party are, of course, competent to show his admissions, although used in another suit, and from their solemn character are entitled to great weight; but they are not conclusive against him and do not constitute an estoppel."

A very exhaustive case note will be found, following the case of First National Bank of Lincoln v. Duncan, 18 Ann. Cas. 78. The author of the note says:

"Although admissions contained in a pleading of a party in a former action are admissible against him in a subsequent action between him and a stranger, the pleading does not conclusively establish the facts alleged therein and is open to explanation or rebuttal."

Following this statement of the law and amply supporting it will be found many English and American cases. Hence we are forced to conclude that the doctrine of equitable estoppel has no application to the facts in this case.

Finding no available error in the record, the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.