624 P.2d 536

SOUTHERN UNION EXPLORATION COMPANY, Plaintiff-Counterdefendant, Appellee-Cross-Appellant,

and

Southern Union Company, Counterdefendant-Appellee,

v.

WYNN EXPLORATION COMPANY, INC. and Wynn Oil Company, Defendants-Appellants, Cross-Appellees,

and

R. C. Wynn, Defendant-Cross-Appellee.

SOUTHERN UNION EXPLORATION COMPANY, Plaintiff-Appellee,

v.

WYNN EXPLORATION COMPANY, INC., Defendant-Appellant.

Nos. 4168, 4262.

Court of Appeals of New Mexico.

Jan. 13, 1981.

Certiorari Denied Feb. 18, 1981.

Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, William J. Mounce, S. Anthony Safi, Grambling, Mounce, Sims, Galatzan & Harris, El Paso, Tex., Charles D. Olmsted, William P. Templeman, Bigbee, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, for defendants-appellants, cross-appellees.

Leo J. Hoffman, David N. Kitner, Dallas, Tex., Strasburger & Price, Dallas, Tex., Victor R. Ortega, Walter J. Melendres, Montgomery & Andrews, P. A., Santa Fe, for plaintiff-counterdefendant, appellee-cross-appellant.

## OPINION

WOOD, Judge.

After almost 2,000 pages of pleadings (the record proper totals 3,900 pages), these oil business litigants finally framed the issues on which this case was tried in a third amended complaint, answer and counterclaim. After some 3,500 pages of trial proceedings, plus voluminous exhibits, the trial court's findings eliminated most of the legal theories asserted. It is unnecessary to catalog the various claims made because appellant, in Cause No. 4262, has abandoned that appeal, and the issues for decision in Cause

No. 4168 are all based on a breach of contract. This Court's jurisdiction, however, is based on claims of fraud (tort claims) alleged in the third amended complaint and counterclaim. See § 34–5–8(A), N.M.S.A. 1978; *Citizens Bank v. C & H Const. & Paving Co., Inc.*, 89 N.M. 360, 552 P.2d 796 (Ct.App.1976).

SX (Southern Union Exploration Company) entered written agreements with one or more of the Wynn defendants for the exploration and development of oil and gas property. The Wynn defendants are R. C. Wynn, Wynn Oil (Wynn Oil Company) and Wynn X (Wynn Exploration Co., Inc.). Wynn Oil and Wynn X are Texas corporations; R. C. Wynn is the sole stockholder of each corporation. Payments due to SX pursuant to the agreements were not made; SX sued to collect those payments and to foreclose an operator's lien. The trial court entered judgment against Wynn Oil and Wynn X, and foreclosed the lien. The liability of Wynn X is not contested. The issues to be discussed are: (1) Apart from Wynn X, who is liable?; (2) the amount of the judgment; and (3) attorney fees.

*Apart from Wynn X, Who is Liable?*

(a) Issues Pled and Tried

■ Wynn Oil contends it cannot be held liable because liability of Wynn Oil under the agreements was neither pled nor tried. This contention is frivolous. R.Civ.Proc. 8(a) provides for notice pleading sufficient to enable the adverse party to answer and prepare for trial. *Malone v. Swift Fresh Meats Co.*, 91 N.M. 359, 574 P.2d 283 (1978). In paragraph 3 of the first cause of action, labeled Breach of Written Agreement, SX alleged that Wynn Oil was the alter ego of R. C. Wynn, but if Wynn Oil was not the alter ego of R. C. Wynn, then Wynn Oil was "directly liable for the damages set forth herein." The damages claimed were the failure to pay amounts due under the written agreements. Wynn Oil's answer denied liability under the agreements and, in an affirmative defense, alleged that Wynn Oil was not obliged to SX "by reason of any contract . . . ." Wynn Oil had notice in the pleading of SX's contract claim. The contracts were introduced into evidence and the trial court made a finding as to the documents constituting the agreement. The contract claim against Wynn Oil was tried.

(b) Party to Contract

Wynn Oil claims it was not a contracting party. The trial court found that three documents constituted the contract. The first two of these documents—a letter agreement addressed to Wynn Oil and an operating agreement—show they were agreed to and accepted by Wynn Oil. These documents were executed on behalf of Wynn Oil by R. C. Wynn, President. The contents of these two documents provide a basis for the judgment against Wynn Oil.

■ R. C. Wynn testified that he never intended to make Wynn Oil a party to the agreement. The controlling intent of a party is his expressed assent and not his secret or undisclosed intent. *State ex rel. Santa Fe Sand & G. Co. v. Pecos Const. Co.*, 86 N.M. 58, 519 P.2d 294 (1974); *Higgins v. Cauhape*, 33 N.M. 11, 261 P. 813 (1927).

R. C. Wynn also testified that the documents showing Wynn Oil as a contracting party were a mistake. Wynn Oil claims this testimony was uncontradicted. Wynn Oil is incorrect. A witness for SX who negotiated with R. C. Wynn concerning the contract and who directed the preparation of the documents, testified: "[M]y understanding that we had that Mr. Wynn wanted to put the deal in Wynn Oil Company's name . . . ."

■ Wynn Oil claims the trial court committed manifest error in finding that Wynn Oil was a party to the agreement. In support of this argument, Wynn Oil reviews the evidence in the light most favorable to its position and, in effect, asks this Court to find the facts in its favor. Such is not proper. *State v. Gonzales*, 82 N.M. 388, 482 P.2d 252 (Ct.App.1971). The trial court determines the credibility and weight of the evidence; we review the evidence in the

light most favorable to SX, the successful party. *Cave v. Cave*, 81 N.M. 797, 474 P.2d 480 (1970).

■ The two documents signed by Wynn Oil, and the testimony of the SX witness concerning the negotiations and preparation of these documents are substantial evidence supporting the finding that Wynn Oil was a party to the contract.

(c) Admissions

Under this item (c) and in the following item (d), we discuss Wynn Oil's arguments that even though originally a contracting party, it was subsequently relieved of any obligation under the contract. These arguments involve the third document found by the trial court to be a part of the contract. This third document was signed by Wynn X.

Wynn Oil claims that in a post-trial brief, prior to findings, SX admitted that the third document substituted Wynn X for Wynn Oil as a contracting party. Wynn Oil also claims an admission by SX resulted from the way SX pleaded the third document in the third amended complaint, and Wynn Oil's admission in its answer that this allegation was correct. Assuming, but not deciding, that these two items can properly be characterized as admissions, what is the effect of the admissions?

Wynn Oil asserts that if unexplained or uncontradicted, the admissions were binding and conclusive upon SX, citing *Turner v. Silver*, 92 N.M. 313, 587 P.2d 966 (Ct.App. 1978), and that the admissions were neither contradicted nor explained. There are two answers to this argument.

■ First, *Turner v. Silver*, supra, expresses only the opinion of its author, Judge Sutin; other members of the panel did not join in Judge Sutin's opinion. Thus, with respect to the effect of admissions, *Turner* is not a decision of the Court of Appeals. *Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980). Judge Sutin's opinion is based on a Kansas decision. We apply New Mexico law. An admission in pleadings, or in testimony, is sufficient to support a find-

ing. *Feldhut v. Latham*, 60 N.M. 87, 287 P.2d 615 (1955); *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.1972). However, an admission "is by no means conclusive.... [T]he admission is only one factor to be considered together with the other evidence." *Michael v. Bauman*, 76 N.M. 225, 413 P.2d 888 (1966). See also *Albright v. Albright*, 21 N.M. 606, 157 P. 662 (1916). If an admission was neither contradicted nor explained, the effect to be given the admission would depend upon the application of the uncontradicted evidence rule set forth in *Medler v. Henry*, 44 N.M. 275, 101 P.2d 398 (1940).

Second, the assumed admissions were contradicted by the express wording of the third document; this wording is set forth in item (d).

(d) Novation

Wynn Oil claims the third document of the contract amounted to a novation which substituted Wynn X for Wynn Oil as a contracting party. See *Dougherty, et al v. Van Riper*, 16 N.M. 600, 120 P. 333 (1911). Wynn Oil's argument that a novation was established by pleadings amounting to an admission was answered in (c) above. Wynn Oil contends that the trial court ruled on the question of novation by rejecting certain of its requested findings. Assuming, but not deciding, that the trial court did rule there was no novation, the question is whether, under the evidence, this ruling was wrong.

■ All of the documents to the contract were executed in Texas and the contract was formed there; Texas law applies. *Satterwhite v. Stolz*, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968). Thus, we do not consider the non-Texas authorities relied on by Wynn Oil.

*Russell v. Northeast Bank*, 527 S.W.2d 783 (Tex.Civ.App.1975) states:

To effect a novation by the substitute of one debtor for another and thereby release the first party, there must be an agreement to that effect between all three parties.

*Ridgleawood, Inc. v. White,* 380 S.W.2d 766 (Tex.Civ.App.1964) states:

A requisite of novation is that parties to the previous contract and the new one agree that the obligations of the new be substituted for and operate as a discharge of the obligations of the first.

*Allstate Insurance Company v. Clarke,* 471 S.W.2d 901 (Tex.Civ.App.1971) states:

Whether a subsequent agreement works a novation is a question of intention. For there to be a novation it must clearly appear such was the intention of the parties. Novation is never presumed.

The third document, asserted to be a novation, is a letter agreement addressed to Wynn X by SX which was agreed to and accepted by Wynn X. As Wynn Oil correctly asserts: "No one executed this document on behalf of Wynn Oil. Manifestly, Wynn Oil was not a party to this agreement ...." This third document made two changes in the agreement reflected by the first two documents of the contract. First, the share of costs and obligations to be paid to SX was reduced from 75 percent to 50 percent. Second, Wynn X, the addressee, was "desirous of the change in name of your Company from Wynn Oil Company to Wynn Exploration Company." This third document went on to state that the first letter agreement was amended accordingly, however the first letter agreement remained in full force and effect "except as herein specifically amended."

A letter exhibit requesting an assignment pursuant to a farmout agreement, which referred to this third document as "correcting" the first letter agreement, was signed by SX and Wynn X. R. C. Wynn's testimony concerning this third document can properly be understood as referring to R. C. Wynn's intentions as an individual and not as referring to the intentions of Wynn Oil.

The trial court could properly view the evidence as showing that Wynn Oil never agreed to be released, *Russell v. Northeast Bank,* supra; that the third document changed the corporate name but did not discharge Wynn Oil's liability, *Ridgleawood, Inc. v. White,* supra; and that SX,

Wynn X and Wynn Oil never intended a novation, *Allstate Insurance Company v. Clarke,* supra. If the trial court did in fact rule on the question of novation by rejecting Wynn Oil's requested findings, we cannot hold, under the evidence, that the ruling was incorrect.

(e) Miscellaneous

The trial court found that by the third (change of name) document, Wynn Oil assigned its rights to Wynn X. This is incorrect because the document was not executed by Wynn Oil and there are no words of assignment in the document. This has no effect on the liability of Wynn Oil for its obligations under the first two documents.

The trial court's findings referred to Wynn Oil and Wynn X "jointly as Wynn." This joint reference provides no basis for a reversal inasmuch as Wynn X is not contesting its liability and inasmuch as Wynn Oil is liable on the basis of the documents it executed.

(f) Alter Ego

In its cross-appeal, SX contends the corporate veil of Wynn Oil and Wynn X should be pierced and liability should be imposed upon R. C. Wynn individually. SX's theory is that the two corporations are the alter ego of R. C. Wynn, that there is such a unity of interest and ownership between the corporations and R. C. Wynn that the corporations are no more than corporate shells utilized by R. C. Wynn to conduct his personal business, that R. C. Wynn has manipulated the assets and operations of the corporations "in an effort to make SX's judgment wholly or partly uncollectible," that the trial court's failure to pierce the corporate veil works an injustice and promotes fraud. See *Scott Graphics, Inc. v. Mahaney,* 89 N.M. 208, 549 P.2d 623 (Ct. App.1976).

SX presents this argument by analyzing factors pertinent to a "piercing" decision. See *Associated Vendors, Inc. v. Oakland Meat Co.,* 210 Cal.App.2d 825, 26 Cal.Rptr. 806 (1962). In doing so, it proceeds in the

same improper manner as did Wynn Oil in arguing that it was not a party to the contract—that is, by reviewing the evidence in the light most favorable to its position. The same SX witness who testified that R. C. Wynn wanted the deal in Wynn Oil's name also testified that it made no difference to him whether the contracting party was R. C. Wynn or Wynn Oil. A permissible inference from this testimony is that SX knowingly dealt with a corporation in which R. C. Wynn owned the stock rather than with R. C. Wynn individually.

■ "A corporation and a stockholder, even though that stockholder be the owner of the vast majority of the stock, are separate entities." *London v. Bruskas*, 64 N.M. 73, 324 P.2d 424 (1958); see *Shillinglaw v. Owen Shillinglaw Fuel Company*, 70 N.M. 65, 370 P.2d 502 (1962). "[T]he corporate entity should be recognized and supported"; limited liability is the rule, not the exception. *Scott Graphics, Inc. v. Mahaney*, supra. Piercing the corporate veil by the device of the alter ego is an equitable remedy. *Associated Vendors, Inc. v. Oakland Meat Co.*, supra.

The trial court could properly view the evidence as establishing that SX knowingly contracted with Wynn Oil rather than R. C. Wynn individually, and that an asserted inability to collect all of its judgment from Wynn Oil was not a basis for relieving SX from a choice knowingly made. The trial court did not err in refusing to find R. C. Wynn individually liable to SX on an alter ego theory.

*Amount of the Judgment*

(a) The Issue of Excessiveness

■ Wynn Oil and Wynn X claim the amount of the judgment was excessive. SX contends the question of excessiveness was not preserved for review because the Wynn corporations neither moved to amend the judgment nor tendered specific findings as to the amount due. SX is incorrect. Requested findings were submitted on behalf of all the Wynn defendants. Requested finding No. 29 was to the effect that SX had never supplied an accurate accounting of the expenses incurred and that the accounting at the time of trial was deficient. This request sufficiently preserved for review the question of the amount of the judgment and the findings on which that amount was based. *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967).

(b) Amount of Excessiveness

■ Wynn Oil and Wynn X claim the judgment is excessive by at least $276,385.00 and by the computation of post-judgment interest. We do not attempt to calculate the amount of the excessiveness; that can be better done by the trial court with the assistance of counsel. The following paragraphs respond to the arguments under this issue, and these responses are to guide the trial court and counsel in recalculating the judgment and interest.

(c) Amount of the Liability for Costs and Expenses

The trial court found Wynn Oil and Wynn X liable for 50 percent of SX's costs and expenses. This percentage amount has not been disputed. The trial court concluded that Wynn Oil and Wynn X, as of November 1, 1978, owed SX $1,879,791.22 and entered judgment for that amount on May 11, 1979. This is an incorrect sum.

First, the trial court found that $279,707.78 of the judgment amount was unpaid interest through October 31, 1978. We discuss the interest question in subsequent paragraphs. Subtracting the interest item, the liability for costs and expenses should have been $1,600,083.44. The trial court's finding, however, was for $1,565,216.01. This discrepancy, of $34,867.43, appears in SX's proof which shows this amount owed for operating costs and delay rental. We do not know whether the trial court intended to disallow the $34,867.43 item; the discrepancy between the finding and the conclusion is to be resolved on remand.

Second, whether or not the trial court intended to disallow the $34,867.43 item, the amount of costs and expenses owed by the Wynn corporations is to be recalculated on

remand in accordance with the operating agreement (previously referred to herein as the second document of the contract). Exhibit C to that agreement, a standardized form for "Accounting Procedure", provided that the operator, SX, was to bill the nonoperators, Wynn Oil and Wynn X "on or before the last day of each month for their proportionate share of costs and expenses for the preceding month. Such bills will be accompanied by statements reflecting the total charges and credits . . . ." SX's proof was to the effect that as of October 31, 1978, the Wynn corporations had credits in excess of $215,000.00. It is undisputed that this credit had not been applied against the amount SX claimed as due and, thus, the credits could not have been applied on a monthly basis as provided by the operating agreement.

### (d) The Interest Rate

█ The trial court found that SX was entitled to interest at the rate of 10 percent per annum on the amount of costs and expenses due from the Wynn corporations, and unpaid. The Wynn corporations claim the interest rate should have been 9 percent. Paragraph 8 of the operating agreement authorized SX to demand and receive advance payments of estimated costs. Upon failure to pay an advance estimate within the time provided, "the amount due shall bear interest at the rate of nine percent (9%) per annum until paid." However, under the monthly billing provision in the "Accounting Procedure", "the unpaid balance shall bear interest monthly at the rate of ten per cent (10%) per annum . . . ." The Wynn corporations contend these provisions are inconsistent. They are wrong. The 10 percent interest rate applied unless the amount unpaid was a billing for an advance estimate. The Wynn corporations do not claim any of the amount they owe SX was for advance estimates. The trial court correctly found that the interest rate on unpaid balances was 10 percent per annum.

### (e) Calculating the Interest Rate

The operating agreement provided that the 10 percent annual interest rate was to be calculated on each unpaid billing and there is testimony that this was done. There is evidence that the total interest due, as of October 31, 1978, was $279,707.78. To the extent this interest was calculated on a balance which should have been reduced by credits (see item c), it is excessive.

The trial court awarded, in a conclusion carried forward into the judgment, an improper interest amount between the October 31, 1978 date to which interest was figured, and the date judgment was entered. The judgment amount was for $1,879,791.22. Of this amount, $279,707.78 was interest. The judgment provides for "interest on such sum from November 1, 1978, until entry of this judgment, at the rate of 10% per annum, and thereafter interest on the judgment at the rate of 10% per annum until paid in full."

█ We are not concerned with the rate of interest. The unpaid balance bears interest at 10 percent pursuant to the contract; the judgment amount would also bear interest at 10 percent. See § 56–8–4, N.M.S.A.1978 (1980 Cum.Supp.). Interest accrued to date of judgment may be properly included within the judgment amount. *O'Meara v. Commercial Insurance Company*, 71 N.M. 145, 376 P.2d 486 (1962). Any interest included within the judgment amount bears interest at 10 percent, but that is because the judgment bears interest.

█ The error was in allowing interest at 10 percent on the $279,707.78 interest item from October 31, 1978 until entry of judgment on May 11, 1979. The contract provides only for simple interest and thus did not authorize interest on interest. SX does not point to any statute authorizing interest on interest prior to entry of judgment. Absent either a contract or statutory provision authorizing interest on interest prior to judgment, such may not be recovered. See *Mississippi Valley Trust Co. v. Oklahoma Ry. Co.*, 156 F.2d 283 (10th Cir. 1946); *Watkins & Faber v. Whiteley*, 592 P.2d 613 (Utah 1979).

(f) SX contends any error resulting from findings insufficient to support the judgment amount, from failure to apply credits at the time provided in the contract, from calculating interest on amounts that should have been reduced by credits, and from calculating interest on interest prior to judgment was either waived or was corrected when the trial court approved the report of a special master's sale.

Wynn Oil superseded the judgment against it; Wynn X's interest in certain property was sold by a special master, and the special master's report was approved by the trial court.

Wynn Oil was not involved in the special master proceedings; those proceedings have no bearing on Wynn Oil's attacks on the amount of the judgment.

Neither the special master's report nor the order approving the report identify any errors in the judgment or purport to correct any such errors; rather, the improper judgment amount is utilized in both the report and the order. SX's brief attempts to show that the errors were corrected but fails in that attempt; the effect of the brief is to highlight the errors of calculation.

SX claims Wynn X waived any right to have the errors corrected by failing to appeal from the order approving the special master's sale. We disagree. Wynn X had appealed the propriety of the judgment prior to the special master's sale; its attack on the propriety of the judgment amount was not waived by not taking a second appeal involving the same issue.

(g) The judgment of liability against Wynn Oil and Wynn X, entered May 11, 1979, is affirmed. The cause is remanded to the trial court to correct errors in the amount of the judgment and the references to the incorrect amount in the order approving the special master's sale. The correction is to be in accordance with the above discussion.

*Attorney Fees*

In its cross-appeal, SX contends the trial court erred in refusing to award it attorney fees.

(a) Basis for Attorney Fees

Absent an authorizing statute or rule of court, or the applicability of an exception such as those discussed in *Aboud v. Adams*, 84 N.M. 683, 507 P.2d 430 (1973), attorney fees are not recoverable. SX relies on § 36–2–39, N.M.S.A.1978 which provides:

In any civil action in the district court ... to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court, and taxed and collected as costs.

(b) Meaning of Open Account

"Open account" in § 36–2–39, supra, does not mean an amount owed on a single transaction. *Lujan v. Merhege*, 86 N.M. 26, 519 P.2d 122 (1974). Nor does it mean an account stated. *Tabet Lumber Company v. Chalamidas*, 83 N.M. 172, 489 P.2d 885 (Ct.App.1971).

"Open account" was defined in *Gentry v. Gentry*, 59 N.M. 395, 285 P.2d 503 (1955) as follows:

[A]n account usually and properly kept in writing, wherein are set down by express or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original, express, or implied intention, there is to be but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other, as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.

This definition is the meaning of open account in § 36–2–39, supra. *Lujan v. Merhege*, supra; *Tabet Lumber Company v. Chalamidas*, supra.

### (c) Was There an Open Account?

The Wynn corporations assert there could not be an open account in this case, citing Texas cases defining "open" and "sworn" accounts. The Wynn corporations argue that "[w]here the contract of the parties expressly defines their respective rights and obligations, no open account results." We reject this contention as too extreme.

Our view is that under the evidence the trial court could properly refuse to find an open account under New Mexico law, or a "sworn account" as defined by Texas law. See *Carter v. Hegar*, 595 S.W.2d 612 (Tex. Civ.App.1980); Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon). The evidence which supports this refusal is found in the terms of the contract, specifically, the operating agreement and the attached "Accounting Procedure". See *Carter v. Hegar*, supra; *French v. Joseph E. Seagram & Sons, Inc.*, 439 S.W.2d 448 (Tex.Civ.App.1969).

New Mexico's definition of open account, *Gentry v. Gentry*, supra, requires "a connected series of debit and credit entries of reciprocal charges and allowances," an account to be "kept open and subject to a shifting balance ... until it shall suit the convenience of either party to settle and close" with "but one single and indivisible liability arising from such series ... fixed ... as the balance shall indicate at the time of settlement or following the last pertinent entry ...." This is the generally accepted definition of "open account" most frequently found in American case law. See 1 Tex. Jur.3d *Accounts and Accounting*, §§ 2 and 3 (1979) at 123; 1 Am.Jur.2d *Accounts and Accounting*, § 4 (1962) at 373, and cases therein cited.

The operating agreement was for 90 days and as long thereafter as specified conditions existed; liability accruing under this term could not be settled or closed at the convenience of the parties.

The Accounting Procedure negates a one, single and indivisible liability fixed at the time of settlement. Rather, the Accounting Procedure provides for monthly billings to be paid within fifteen days after receipt of the bill and thus contemplates divisible liabilities.

The Accounting Procedure provides for adjustments and reaches (we need not consider whether this reach was successful) for an account stated by a provision that a bill (any monthly bill) "shall conclusively be presumed to be true and correct" absent written exceptions to the bill within a specified time period.

The trial court did not err in refusing SX's requested finding that there was an open account. There being no open account, § 36–2–39, supra, did not authorize attorney fees. With this result, we need not consider other arguments presented on the question of attorney fees.

The judgment of liability having been affirmed, the cause is remanded for further proceedings in connection with the amount of the judgment, as previously specified. Each party is to bear his own costs.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.