**TYLER CO. v. BELLOWS et al.**
**No. 3026.**

Court of Civil Appeals of Texas. El Paso.
Feb. 7, 1935.

Rehearing Denied Feb. 21, 1935.

Lewis B. Lefkowitz and Smithdeal, Shook, Spence & Bowyer, all of Dallas, and Tolles, Hogsett & Ginn, of Cleveland, Ohio, for appellant.

R. G. Storey and E. Taylor Armstrong, both of Dallas, for appellees.

WALTHALL, Justice.

On the 24th day of July, 1928, appellees, W. S. Bellows and W. H. MacLay, copartners in the general contracting business in the firm name of Bellows-MacLay Construction Company, and on the above date contracted with the Third & Madison Company to construct a building known and referred to as the Sterick building in the city of Memphis, Tenn. Under that contract appellees were obligated to furnish all labor and material in the construction of the building in accordance with the plans and specifications furnished by the building architect.

On the 3d day of April, 1929, appellees entered into a subcontract in writing with appellant, the Tyler Company, the terms of which obligated appellant to provide all material and perform all labor in erecting eight elevators on the ground floor of the Sterick building, for the consideration of $12,160. In the meantime the Sterick building had become the property of the Sterick Building, Inc.

The Sterick building was erected and the elevators were installed as contracted, and this controversy does not involve the proper erection of said building nor the proper installation of said elevators, both having been accepted.

Appellant, the Tyler Company, brought this suit against appellees to recover of them the unpaid balance due under the contract for installing the said elevators. At the time of the acceptance of the elevators there was a balance due appellant of $7,000, plus some interest.

On the 26th day of December, 1930, the Sterick Building, Inc., a corporation, the owner of the building, executed and mailed to

appellant five notes payable to appellant, each in the sum of $2,000, and due one, two, three, four, and five months after their date, respectively. Here is the controversy in the suit: Appellant alleges that it "refused to accept these notes in payment of the indebtedness owing by the defendants to it, but did take them as collateral security only for the payment of the aforesaid debt of the defendants to it, and in accepting these notes your plaintiff had no intention of releasing the defendants from their liability to your plaintiff on their aforesaid debt, or of substituting the said Sterick Building, Inc., as plaintiff's debtor. One of these notes was thereafter paid and the sum of $1,000.00 was paid on another of them, and for the payments thus made credit was given to the defendants, and plaintiff here tenders the remainder of said notes into court for delivery to the defendants or to whomsoever may be entitled to receive them." Appellant then alleged that appellees are jointly and severally indebted to it in the sum of $7,000, with interest, for which it sues.

To the above appellees pleaded general denial and specially pleaded the contract for the erection of said building on the basis that the owner of the building was to pay for all labor and material, and that appellees were to receive a definite fee in addition thereto as their sole compensation; that appellees were the owner's agents, which appellant knew; that said contract with appellant was originally entered into between appellant and the owner directly, and the consideration directly agreed upon between appellant and the owner, and that appellees were instructed as contractors to enter into the said subcontract with the knowledge and consent of appellant and the owner; that, on the completion of the building, appellant and the then owner agreed upon a settlement, partial payments were made by the then owners, and the said notes were thereafter accepted by appellant in full payment of the contract price, all without the consent of appellees, in full payment and satisfaction of the contract price for said elevators. By reason thereof appellees pleaded a novation of said debt.

The case was tried with a jury. The court heard the evidence. The court overruled appellant's motion for an instructed verdict in its favor, and submitted to the jury one special issue as follows: "Do you find from a preponderance of the evidence that at the time the notes executed by the Sterick Building, Inc., dated December 26, 1930, were delivered to the plaintiff, the Tyler Company, that it was intended by all parties that Bellows-MacLay Construction Company, the de-

fendants, should be released from all further liability to plaintiff in the sub-contract sued upon? Answer yes or no." The jury answered, "Yes."

In submitting the issue, the court put the burden of proof upon appellees.

The court entered judgment that appellant take nothing by its suit, and appellant prosecutes this appeal.

## Opinion.

Appellant's first five propositions submit, in substance, that, the uncontroverted evidence showing that the written contract between appellant and appellees obligated appellees to pay appellant the contract price for installing the elevator entrances in the Sterick building, and that appellant had never released appellees from such obligation, the court erred in refusing to instruct the jury to find a verdict for appellant against appellees for the balance of $7,000 and interest admitted to be due; that, under the undisputed facts as stated, the court erred in submitting any facts to the jury; that, the evidence being uncontradicted, and showing as a matter of law that by taking said notes appellant did not intend to release appellees from their written contract sued upon, it was error to submit the issue submitted; that, appellees having failed to plead that it was the intention of all parties interested, at the time the notes were executed to release appellees, and there being no evidence tending to show such release, it was error to submit such issue; it was error, under the undisputed facts as stated, to render judgment against appellant.

Appellant discusses the above propositions together. Outside of the two written contracts, one for the erection of the building and the other for the installation of the elevators, the evidence rests largely in correspondence between Wyatt C. Hedrick, the president of the Sterick Building, Inc., and at the same time the architect of the building erected, and appellant, and some parol evidence of witnesses with reference to the subcontract for the installation of the elevators. Without quoting the evidence in the correspondence in full, it shows that Wyatt C. Hedrick dealt directly with appellant substantially as follows:

On March 24, 1929, Wyatt C. Hedrick wrote appellant asking that appellant "submit to us" the doors for the elevators and referred to a previous conversation. On March 26, 1930, appellant wrote Wyatt C. Hedrick it was sending Tyler designs, giving numbers, and saying: "These designs were prepared some

time ago for use in connection with your Memphis Building." Wyatt C. Hedrick and appellant then agreed upon the price of $12,-000 to be paid for the installation of the elevators. The record shows without any controversy that before the subcontract between appellant and appellees was executed Wyatt C. Hedrick had made the deal with appellant for the installation of the elevators, and that before the subcontract was entered into advised appellees that he had done so. The evidence shows that, after the building had been completed, appellees had nothing to do with the settlement or adjustment of the Tyler Company account; that appellees knew nothing of the execution of the notes signed by the Sterick Building, Inc., until in June, 1931. The correspondence between appellant and Wyatt C. Hedrick and appellees by letters and telegrams shows that appellant was demanding of the Sterick Building, Inc., and appellees the payment of the amount due for installation of the elevator doors. We quote here portions of the correspondence:

On October 21, 1930, the appellant wrote to Wyatt C. Hedrick, Inc., as follows:

"Wyatt C. Hedrick, Inc., First National Bank Building, Fort Worth, Texas.

"Re Sterick Building, Memphis, Tenn.

"Gentlemen: This will acknowledge receipt of your letter of the 10th instant inclosing a check for $1,000.00 to apply on the above account.

"While we are, of course, grateful for the remittance nevertheless it is not at all up to expectations inasmuch as we were counting on the receipt of a check for $5,000.00 at least.

"We have placed considerable faith in your assurances of settlement given from time to time, but we must state very frankly that your failure to fulfill your promises has tended to shake our confidence.

"In entering into this contract with you it was our assumption that the work would be paid for promptly under the contract terms. Your action in deferring payment beyond the time specified in the contract is tantamount to asking our assistance in financing your project. We are not in a position to carry this account indefinitely and as almost one whole year has elapsed since the contract was completed, we feel that every opportunity has been given you to conclude a settlement.

"After crediting the above remittance of $1,000 there is due on your account the sum of $10,191.00, plus interest to the 20th instant of $540.85, or in other words, a net balance of $10,731.85.

"Considering present conditions we realize the futility of asking you to remit this sum in cash, so, in order to effect a settlement of the account on a basis that will prove neither burdensome nor unreasonable, we will accept a series of notes, five in number for $2,000.00 each payable monthly, aggregating $10,000.00, the balance of $731.85, to be paid in cash.

"Assuming that you realize the necessity of closing this old account, we are hopeful that you will accept our offer by signing and returning to us the notes inclosed, together with your check for the balance of $731.85.

"Very truly yours,

"The Tyler Company,

"W. M. Sewell, Accountant.

"PS. Kindly designate the name of the bank at which the notes will be payable."

The appellant again communicated with Wyatt C. Hedrick by telegrams dated October 29, 1930, and November 12, 1930, as follows:

"1930 Oct. 29 P.M. 12 51

"FW6 15 PWS Cleveland Ohio 29 125P

"Wyatt C. Hedrick, Inc., First National Bank Bldg., Ft. Worth, Texas

"Mail today notes and check covering Sterick account books for October close Saturday Please attend.

"Tyler Company."

"1930 Nov. 12 AM 9 36

"CA91 16—Cleveland Ohio 12 1023A

"Wyatt C. Hedrick, Inc., First National Bank Bldg., Ft. Worth, Texas.

"Kindly execute notes and forward same with check as outlined our letter twenty first ultimo urgent.

"The Tyler Company,"

and by letter dated November 12, 1930, as follows:

"The Tyler Company

"Cleveland, Ohio

"November 12, 1930.

"Wyatt C. Hedrick, Inc., First National Bank Bldg., Fort Worth, Texas.

"Sterick Building,—Memphis, Tenn.

"Gentlemen: Under date of October 28th Mr. Boker wrote us that upon Mr. Hedrick's return to Fort Worth, which he expected would be the 5th or 6th of November, our letter of October 21st outlining a proposal of settlement of the above account would be immediately brought to his attention.

"Sufficient time has elapsed to permit execution and return of the notes, which will explain our wiring you today as follows:

" 'Kindly execute notes and forward same with check as outlined our letter 21st ultimo. Urgent.'

"This account has been oustanding for over a year and it is of the utmost importance to us to close the transaction in November receipts—hence, in case you have not already done so, please forward the notes and check promptly upon receipt of this letter.

"Yours very truly,
"The Tyler Company,
"[Signed] W. M. Sewell, Accountant,"

and on December 12 and 18, 1930, again insisted that Wyatt C. Hedrick execute the notes as agreed upon:

"1930 Dec 18 PM 1 44
"CA 184 12—Cleveland Ohio 18 23 OP
"Wyatt C. Hedrick, First National Bank Bldg., Ft. Worth, Texas.

"Please mail today check and notes Sterick account as agreed very urgent.

"The Tyler Company."

"1930 Dec 12 PM 1 26
"FW 3 22 WS Cleveland Ohio 12 156P—
"Wyatt C. Hedrick, First National Bank Bldg.,

"Awaiting receipt of check and notes promised your letter fifteenth ultimo settlement cannot be deferred longer please mail check and notes today.

"The Tyler Co."

"December 30, 1930.
"Mr. Wyatt C. Hedrick, First National Bank Building, Fort Worth, Texas.
"Sterick Building.

"Dear Mr. Hedrick: This will acknowledge your letter of the 26th instant enclosing five notes for $2,000.00 each, payable monthly, and a check for $731.85, which includes interest charges of October 21st, amounting to $540.85.

"Due credit has been given your account for same, but as stated in your letter, there is still an adjustment to be made for interest charges for the period between October 21st, and December 26th. According to our figures the amount is $110.50, representing 65 days interest on the principal of $10,191.00.

"We note that the notes have been altered to obligate Sterick Building, Inc., instead of Wyatt C. Hedrick, Inc. This, in our opinion, necessitated a change in the name of the bank at which the notes are to be paid, hence we have inserted the name of the Bank of Commerce & Trust Company, Memphis, Tenn., upon which your last remittance was drawn.

"Trusting you will forward a check promptly for the amount of interest due which will place our respective accounts in balance and thanking you for the settlement, we are

"Yours very truly,
"The Tyler Company,
"W. M. Sewell, Accountant."

Mr. Wyatt C. Hedrick testified by deposition as follows:

"Interrogatory No. 19:

"Please state whether or not you made any payments upon the account of The Tyler Company directly after the building was finished. If so, please give the amounts thereof and the time of payment, if possible.

"Answer to Interrogatory No. 19:

"Yes—payment made October 10th, 1930, in the amount of $1,000.00; December 26th, 1930, in the amount of $731.85; January 2nd, 1931, $110.50, additional interest payment. Note No. 1 in the amount of $2,000.00, paid January 28th, 1931, together with interest of $1.33."

"Interrogatory No. 20:

"After the building was finished and accepted, please state if you know, when was the first time that The Tyler Company was making any demand upon Bellows-MacLay Construction Company for the payment of said notes or said account.

"Answer to Interrogatory No. 20:

"June 13th, 1931, letter from The Tyler Company to Bellows-MacLay Construction Company, and their reply to The Tyler Company June 16th, 1931, copies of which letters are attached."

"Interrogatory No. 22:

"If default was made in the payment of the notes, if any, then please state whether or not The Tyler Company ever agreed to extend the payment of any such maturity or to give you any further time of grace? If so, please state what the facts were, and if the negotiations were by correspondence, then please attach the originals of the letters from The Tyler Company, and true and correct copies of your letters to The Tyler Company, marking same for proper identification.

"Answer to Interrogatory No. 22:

"The Tyler Company was very reasonable in every way, and made, I think, a sincere effort to assist in adjusting the account, consistent with good business. Such letters as we have from The Tyler Company are attached about this and all of our negotiations."

"Interrogatory No. 23:

"Has the Tyler Company ever sued you or any of the companies with which you are connected for the amount of their contract price or the amount of the notes or any other sum? If so, state the nature of said suits, if any, and where pending.

"Answer to Interrogatory No. 24:

"No."

There was introduced in evidence a telegram dated April 2, 1929, from The Tyler Company to Wyatt C. Hedrick, and the answer thereto as follows:

"RG Atlanta Ga Apl 2, 1929.

"Wyatt C. Hedrick, Architect, First Natl Bank Bldg., Ft. Worth, Tex.

"Sterrick Building please advise if contracts covering first floor elevator entrances are to be made out to you or the general contractor.

"The Tyler Co."

"Fort Worth, Texas.
"April 3, 1929.

"The Tyler Company, 808 Bona Allen Bldg., Atlanta, Georgia.

"Retel Sterick doors make with Bellows MacLay Construction Company.

"Wyatt C. Hedrick, Inc.

"Collect

"Straight Message—9 words,
"11:45 AM"

The witness Hedrick also testified by deposition as follows:

"25. Is it also not true that the letter of January 24, 1931, to The Tyler Company from Wyatt C. Hedrick, Inc., signed by you requesting that company to look only to 'us,' for the payment of the Sterick Building account was written with the knowledge and at the suggestion and instance of Mr. MacLay?

"Answer: It was written with his knowledge, but not with any insistence. I felt it was my obligation and I wanted to pay it, and wanted The Tyler Company to look only to me for it."

The witness Hedrick also testified as follows:

"Interrogatory No. 11:

"Did you pay to Bellows-MacLay Construction Company any portion of the consideration agreed to be paid to the Tyler Company? If so, please state the amounts thereof and give the dates of such payments, if any.

"Answer: Bellows-MacLay Construction Company was paid on monthly, semi-monthly and weekly estimates, when we could get the money to pay them, and always tried to pay them as much as 85% of what was due on their contract. Toward completion of the job we got behind. The Tyler Company account was one of the last items to become due, and we made no specific payments for specific purposes on this account that our records will support, or that I recall."

Witness MacLay testified as follows:

"Just a few days before the contract with appellant was signed, Mr. Hedrick advised me: 'We have bought the doors and elevators from the Tyler Company, Cleveland, Ohio.' I would not have anything to do with agreeing on the terms or the prices."

"Wyatt C. Hedrick asked me to sign the sub-contract with appellant."

"The elevator entrances were installed by appellant under the direction of Wyatt C. Hedrick, the architect."

"We received from the owner of the building $969.00 on this particular account."

"Appellees remitted to appellant every cent and every dollar collected from the owner for this account."

The question presented is: Did the execution and delivery of the notes by the Sterick Building, Inc., if accepted by appellant in satisfaction of the amount due under the subcontract, relieve appellees of the liability under the subcontract? Such was the issue tendered in the pleadings. In other words, did the execution and delivery of the notes, if accepted by appellant in full payment of the amount due, novate the amount due under the subcontract? Appellant submits that, to be a novation, there must have been an agreement between the owner, the Sterick Building, Inc., appellees, the general contractor, and the appellees, the subcontractors, to relieve the general contractor from its liability to appellant, and refers to Gimble & Sons v. King, 43 Tex. Civ. App. 188, 95 S. W. 7, 8. Judge Fly held in that case that: "The mere taking of the note [for a precedent debt], without some evidence that it was taken in satisfaction of the debt, does not constitute a novation."

In that case Judge Fly said it was shown positively that there was no agreement of any kind in regard to the note. Here appellant was insisting that Wyatt C. Hedrick pay the debt, and had accepted payments of him.

In this case, as we understand it, the Sterick Building, Inc., was not a new debtor in the matter of the installation of the elevator doors. The first paragraph of the subcontract made the things under the contract to be done under the direction of the architect, Wyatt C. Hedrick, and that the things to be done under the subcontract should be furnished by the architect, Wyatt C. Hedrick.

◼ The authorities as in the Gimble & Sons v. King Case, and other cases referred to by appellant, put the burden of proving novation upon the one who asserts it.

Novation has often been defined and re-stated by the courts in this and other jurisdictions. Without doing so here, we will content ourselves by stating the essential facts which constitute novation.

Texas Juris. vol. 31, p. 386, says: "In every novation there are four essentials: (1) a previous valid obligation; (2) the agreement of all parties to the new contract; (3) the substitution of the new contract for the old, effecting its extinguishment; and (4) the validity of the new contract."

The question of the intention of appellant in accepting the notes must be decided from all the circumstances, and such intention may be found although there is nothing positive in the agreement. Novation is effected by contract and is subject to all the rules which cover the field of contracts in general. Continental Gin Co. v. Gardner (Tex. Civ. App.) 248 S. W. 92. Novation is simply a branch of the law of contracts and subject to the general rules of contract law.

Considering the fact of the intention of appellant when it received the notes as found by the jury and the undisputed evidence that the notes were executed and delivered to appellant by Wyatt C. Hedrick in discharge of the debt, and the notes in part, collected and paid in discharge of the debt, we think establishes novation.

The court permitted appellees, over objection, to introduce in evidence the general contract between Third & Madison Company and appellees for the erection of the Sterick building, and the overruling of its objection is made the ground of appellant's sixth proposition.

The subcontract between appellant and appellees states that appellees had entered into a contract with Third & Madison Company to furnish all necessary labor and material for the complete construction of Sterick building, and provides that the sum to be paid by appellees to appellant was "85 per cent of all labor and material which has been placed in position and for which payment has been made by the owners to the general contractors to be paid on or about the 15th of the following month," except as to the appellant, which was to be paid within thirty days after completion and acceptance.

Appellees submit that, the portions of the contract sued on so providing as above, it was proper to show the payments made under the general contract. We think no reversible error is shown by the admission in evidence of the contract.

We have reviewed the propositions not discussed, and we are of the opinion they present no reversible error.

The case is affirmed.