**James L. RUSSELL, Appellant,**

v.

**NORTHEAST BANK, Appellee.**

**No. 16514.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 7, 1975.

Rehearing Denied Oct. 2, 1975.

W. Timothy Lewis, Stephen Perel, Houston, for appellant.

Ducoff & Chanon, Bernard L. Chanon, Houston, for appellee.

EVANS, Justice.

Northeast Bank was awarded a default judgment against James L. Russell in the amount of $26,875.00 and attorney's fees in the amount of $4,031.25 in a suit brought by Northeast Bank against Russell on a promissory note. Russell asserts the trial court erred in overruling his timely filed motion to set aside the default judgment and for a new trial, contending that the evidence established that his failure to answer before judgment was not intentional or the result of conscious indifference but was due to mistake or accident; that he had set up a meritorious defense and that a delay would not injure Northeast Bank. He also asserts that the court erred in considering opposing testimony and evidence upon the hearing of his motion to set aside the default judgment and for new trial.

In his affidavit attached to his motion, Russell stated that he had been served with citation on September 18, 1974 and immediately called the bank's attorney whom he had known for twenty-five years. He stated that he explained to the bank's attorney that he had an agreement with J. Felton Leake, the president of Northeast Bank, and Herb Handley, chairman of its board of directors and a principal stockholder, whereby Handley was to pay off Russell's note out of the funds which he owed to Russell. According to his affidavit, Russell owned 16,400 shares of stock in the bank and on April 22, 1974 Handley had agreed to purchase his stock for $4.80 per share (or a total purchase price of $78,720.00). Russell stated in his affidavit that the bank's attorney replied that he would "hold off on the suit and wouldn't do anything further" so that Russell could complete his agreement with Handley and the bank. He stated that relying on the attorney's representation he proceeded to try to complete the agreement but that "the next thing" he knew, he received a postcard from the District Clerk's office advising that the default judgment had been taken against him. He stated he then contacted his attorney and related the events to him. He further stated that between September 18, 1974, when he talked to the bank's attorney, and December 10, 1974, when he received the postcard from the District Clerk, he had been in the bank on several occasions and conversed with various bank officers, but that nothing was ever said about the note or the lawsuit. He said that if he had known the attorney's representations were untrue he would not have relied thereon and certainly would have instructed his attorney to file an answer in the suit. He said he had been a director of the bank and felt that the bank would not do anything to prejudice his rights. At the hearing on the motion, Russell testified that he had an agreement with Mr. Leake, the president of the bank, and Mr. Handley, chairman of the board, and chief executive officer of the bank, under the terms of which Handley was to purchase Russell's stock in the bank and from the purchase price, the sum of $25,000.00 was to be paid to the bank. He further testified, however, that the president of the bank had never agreed not to collect the note from him or that he would no longer be responsible for its payment.

Over objection the attorney for the bank was permitted to testify that all conversations which he had had with Russell had occurred prior to filing suit and that he had only agreed to postpone filing of the suit for thirty days.

The trial court found that Russell's failure to timely file answer was of his own doing and such failure did not result from representations alleged to have been made to him or from accident or mistake. The trial court also found that the Northeast Bank had not agreed to release Russell from his obligation nor to accept another debtor in his stead. Russell attacks both the legal and factual sufficiency of these findings.

"A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided the motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939); *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

In *Beard v. McKinney*, 456 S.W.2d 451, 453 (Tex.Civ.App.–Houston [1st], 1970, no writ), the appellant asserted that a timely answer had not been filed on his behalf because of a breakdown in the procedure of his attorney's office and his attorney's reliance upon the actions of appellee's attorney which were inconsistent with the taking of the default judgment. We indicated that in a case of this nature a "slight excuse" may constitute justification for failure to file a timely answer. Considered alone, Russell's testimony would tend to support his contention that his failure to file timely answer was not intentional or the result of conscious indifference on his part. However, his testimony was contradicted by the testimony of the bank's attorney who stated that their conversation had occurred prior to filing of suit and that he had only agreed to postpone filing for 30 days. The trial court was at liberty to consider such contradictory testimony and to accept it as true. *Strode v. Silverman*, 217 S.W.2d 454, 457 (Tex.Civ.App.–Waco, 1949, writ ref'd); *Capps v. Huff*, 427 S.W.2d 121 (Tex.Civ.App.–Eastland, 1968, no writ). We hold its findings are supported by the evidence and are not against the great weight and preponderance of the evidence.

We are further of the opinion that Russell failed to establish a meritorious defense to the bank's suit. In his answer Russell pleaded only that he was not liable on the note for the reason that the bank had agreed to accept Handley as a debtor in his place and stead and that a novation was therefore created. To effect a novation by the substitute of one debtor for another and thereby release the first party, there must be an agreement to that effect between all three parties. The addition of a second obligor on the debt does not give rise to a presumption that the first has been released. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422 (1953).

The principal testimony offered by Russell on this point was as follows:

"Q. And wasn't this conversation more a request on your part, a request to Mr. Leake, that when you got paid you would be able to pay the bank this money?

"A. Well, I guess you could put it that way. No it was more . . . Mr. Leake said, 'Whenever Handley pays you I am going to take the money out of what he pays you that you owe the bank.' I said, 'Fine. All right?' He never did.

"Q. All right. He never did agree not to collect that note from you?

"A. No, sir.

"Q. He never told you that you would not be responsible for the payment of that note in the future?

"A. No, he didn't."

It is clear from the record that no specific representations were made to Mr. Russell that he would be relieved of his obligation to the bank and that Mr. Handley would be

substituted in his stead. On the other hand it might be inferred from his affidavit and testimony that some understanding had been reached with the bank whereby the bank would be afforded the right to intercept the proceeds of his stock sale to Handley and to deduct the amount of its debt from such funds.

In *Ferguson v. D. S. A., Inc.*, 430 S.W.2d 553 (Tex.Civ.App.–Waco, 1968, no writ), the payee of a $10,000.00 note had written a letter to the maker in which he acknowledged his understanding that the principal balance of the note was to be reduced by the sum of $2,000.00 which was to be paid by a third party. The trial court entered a take nothing summary judgment against the maker although he had stated in his affidavit filed in opposition to the motion for summary judgment, that he had not intended to release the maker from its obligation to pay the full amount of the note and that his letter merely constituted a restatement of a supposed agreement between the maker and the third party. On appeal the trial court's judgment was affirmed on the ground that the payee had renounced his rights to the last $2,000.00 of the $10,000.00 note and had effectively discharged the maker's liability.

In the case before us there is only parol evidence of the alleged agreement between Mr. Russell and the bank. In our opinion this evidence would not in itself support a defense based upon either novation or renunciation.

■ Section 3.605, Texas Business & Commerce Code, provides that the holder of an instrument "may even without consideration" discharge the obligor "by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged." The evidence offered on behalf of Mr. Russell does not establish a defense of renunciation under the provisions of this statute.

■ We recognize that an express release is not necessary to effect a discharge of an original obligation by novation and that an agreement to accept a new obligation in lieu of and in discharge of an old debt may be inferred from the acts and conduct of the parties and other facts and circumstances. In *Utay v. Urbish*, 433 S.W.2d 905 (Tex.Civ.App.–Dallas, 1968, writ ref'd n. r. e.), a novation was established by proof of an instrument executed by a deceased payee of the note evidencing an intent that the debt be cancelled upon her death and proof that the maker had performed under such agreement by paying the interest on the note up to the time of the payee's death. In *Tyler Company v. Bellows*, 78 S.W.2d 1100 (Tex.Civ.App.–El Paso, 1935, no writ), a novation was established by proof that the payee of the note had accepted notes from a third party in discharge of the maker's debt, had insisted upon payment from the third party and had accepted payment under the substituted notes. In those cases, however, there was evidence, either in the nature of a writing or by a showing some affirmative conduct on the part of the payee, which tended to support the inference of an agreement by payee to accept payment from a third party in discharge of the maker's obligation. In the case before us there is no evidence tending to show that the bank did in fact collect some portion of the proceeds of the sale of Russell's stock to Handley and, on the contrary, the inference to be gained from the evidence is that it did not effect collection.

■ In its findings of fact the trial court found that the bank had not agreed to release Russell from his obligation and did not agree to accept another as a debtor in his stead and as a matter of law concluded that Russell had failed to establish a prima facie showing of the existence of a meritorious defense. In our opinion the evidence presented by Russell did not establish a novation and the findings of the trial court are not against the great weight and preponderance of the evidence. *Kohn v. Zaludek*, 38 S.W.2d 110 (Tex.Civ.App.–Waco, 1931, no writ).

In determining the question of a meritorious defense the trial court should have considered only the affidavits and other evidence offered by Russell which prima facie showed his entitlement to a new trial and should not have considered contradictory testimony. *Ivy v. Carrell,* 407 S.W.2d 212, 214 (Tex.1966); *Cragin v. Henderson County Oil Development Co.,* 280 S.W.2d 554, 555 (Tex.Civ.App.1926, judgment approved). However, the affidavit and other evidence offered by Mr. Russell in support of his motion failed to set forth sufficient facts which, considered alone, would constitute a defense to the cause of action asserted by plaintiff. Thus, the hearing of contradictory testimony was harmless under Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.