OPINION. OfpeR, Judge: Except for one feature, this case would be controlled by Murphy Shannon Armstrong, 1 T. C. 1008, decided herewith, and this proceeding could be disposed of accordingly on the authority of Helvering v. Clifford, 309 U. S. 331, and Helvering v. Stuart, 317 U. S. 154. Petitioner retained complete control over principal and income, both as trustee and as managing partner. The beneficiaries were members of his intimate family group. He was expressly permitted to “expend, use and lay out for the comfort, education, training, care, support, and welfare of each of his sons aforesaid, such amounts from their respective shares of the income * * * as to him shall seem proper * * and expenditures were made for these purposes during the tax year for each of the children. The trusts “were intended to be for a short period of time.” If there is any difficulty in determining the extent to which petitioner actually treated the property as the subject of a trust and in deciphering the somewhat vague and occasionally inconsistent attitude of the parties toward the arrangement, that is rather a ground for inferences unfavorable to petitioner and for doubts whether any real transfer to the children was intended than the justification for transforming into an outright gift the sweeping discretionary trust which petitioner was so careful to arrange. See Higgins v. Smith, 308 U. S. 473. The respect in which this proceeding differs from the Armstrong case where only the husband’s separate property was placed in trust, is that here an interest in the partnership belonged to petitioner’s wife, who is his co-petitioner. It is suggested that it was part of the property transferred, and that if petitioner’s retained control subjects him to tax under the- doctrine of the Clifford case, the same can not be said of the wife. It seems to us, however, that the principles of Helvering v. Clifford, combined with the effect of community property concepts, lead to the opposite conclusion. Respondent is not seeking to tax to petitioner the share of the community income which, were it not for the trust, would have been taxable to the wife. His endeavor is to attribute to the wife that part of the income on the theory that as to her the trust has made no greater change in her economic position than did the corresponding trust created by the husband in his position. It is not evident from the record what, if any, portion of the partnership income set aside for the sons came from the wife’s share. No direct statement appears that she owned one-half, and the “Declaration of Trust and Partnership” recites only that petitioner’s “wife. Jennie C. Losh has, and had a substantial interest.” It might accordingly be concluded that it was entirely the petitioner’s share which he held in trust for the boys and, if so, of course, the Clifford theory would apply in full to him. We may assume, however, in petitioner’s favor, that prior to the declaration of trust the wife’s interest was equal to that of petitioner. The evidence is not clear as to the character of that interest, as to the source of the wife’s investment, as to whether the funds which the wife contributed in the first instance were hers or those of the community, or as to the extent to which the earnings from her personal services, inescapable community assets, Albright v. Albright, 21 N. M. 606, 157 Pac. 662, contributed to the ultimate capital used to expand the business. The presumption is that any property acquired during coverture belongs to the community. Strong v. Eakin, 11 N. M. 107; 66 Pac. 539. And the most convincing information comes from the tax returns in which husband and wife reported all of the income on the community basis. If any of it was that of the wife alone, such treatment would have been inaccurate. We accordingly take it for granted that the wife’s partnership interest, along with the corresponding interest of the husband, was community property and that the income would be community income. As to both, under the community property law of New Mexico, the wife’s interest and control were completely subject to the domination and management of petitioner. New Mexico Stat. (1941) Ann. Official Ed., § 65-408. So long as he lived petitioner would be the manager of the community and the agency for determining the disposition of the property and the manner of expenditure of the income. The case of Beals v. Ares, 25 N. M. 459; 185 Pac. 780, treats “the following propositions * * * as settled”: (1) That under the law in this jurisdiction the wife’s interest in the community property is equal with that of the husband; that * * * he is by-statute made the agent of the community and given dominion and control over the community property during the continuance of the marriage relation * * *. The wife has “no voice in management of the property.” Jenkins v. Huntsinger, 46 N. M. 168; 125 Pac. (2d) 327, 334. In Baca v. Village of Belen, 30 N. M. 541; 240 Pac. 803, the effect of the statutory amendment of 1915 “not considered in the Beals v. Ares case” was stated to be not that “the husband is no longer the head of the community, and, as such, the manager of the community property,” but merely that “the husband should no longer, after the amendment, have the absolute power of disposition of real property of the community. Beyond that, the husband acts as a sort of agent of the community.” Even as to the real property, the New Mexico Supreme Court does “not believe that * * * it was the intention of the Legislature to take from him [the husband] the right and power to manage and control the real estate of the community in all other respects.” Fidel v. Venner, 35 N. M. 45; 289 Pac. 803. See also Levy v. Kalabich, 35 N. M. 282; 295 Pac. 296. Thus, when the wife permitted the husband to become trustee of the transferred community property she gave up no control or dominion that she had had previously, but placed petitioner in essentially the same relation to the property as trustee as he had formerly been in as manager of the community. The result is that, as far as petitioner and his wife were concerned, neither relinquished nor changed in any important respect the relationship and control which each had as to the family property. They accomplished a temporary reallocation of income within the family group just as in the Clifford case. But as in that case it is difficult to see that the wife any more than petitioner could have felt herself the poorer as a result of the creation of the trust. Nor can it be granted that the principles of Douglas v. Willcuts, 296 U. S. 1, and Helvering v. Stuart, supra, are any the less applicable here to the wife than to the husband. The duty of support resting primarily upon the father in ordinary common law jurisdictions is apparently placed with equal weight upon the mother under the concept of community property. Thus, the New Mexico statute law places in both parents “equal powers, rights and duties concerning the minors. The mother shall be as fully entitled as the father to the custody, control and earnings of their minor * * * children.” New Mexico Stat. (1941) Ann., Official Ed., § 19-303. And as Ex parte Wallace, 26 N. M. 181; 190 Pac. 1020, points out: It is. the duty to support and maintain the child that gives to the father and mother the right to the custody of the child and to its earnings during minority * * *. This is indeed the necessary corollary of the wife’s equal right in community income, coupled with the dominion of the husband and father over its expenditure and the provision that his obligations shall be presumed to be those of the community. Strong v. Eakin, supra. According to the Spanish Code, from which these principles were derived, “the conjugal partnership shall be liable for: * * * the support of the family and education of the children * * * .” McKay, Community Property, 2d Ed., p. 529. Since the wife’s share in the community income is liable to be diminished by a proportionate part of the amounts spent for the support of the children of the marriage, it is clear that the wife’s property interests are proportionately subject to the burden of these obligations and hence that any trust established to discharge them correspondingly inures to her benefit. These considerations lead us to the view that the trust income was taxable to petitioner and his wife equally, as determined by respondent. The consequence of .the trust was to leave each for tax purposes in substantially the same position as before, and without the trust the tax law would have treated the income of the community as divided equally between them. Respondent’s action in this respect appears to have been proper. Concerning the business expenses of the partnership claimed and disallowed by respondent, we think the record adequately shows that they were not paid to public officials contrary to the doctrine of policy established with respect to such expenses, and that they were sufficiently related to current business so that it was not necessary to capitalize them as contributions to good will. If public officials partook to any extent of the entertainment furnished by petitioner, this was purely accidental and inconclusive. And the purpose of obtaining the favorable inclination of prospective bidders and their employees apparently related to contracts about to be let and not to mere long range expectancies. ' The final issue relates to commissions earned in the tax year but not accrued because disputed by the debtors. It seems to us the doubt of collectibility was sufficiently great so that the leeway permitted for the judgment of the taxpayer has not here been exceeded. Clifton Manufacturing Co., 1 T. C. 71; Jamaica Water Supply Co., 42 B. T. A. 359; affd. (C. C. A., 2d Cir.), 125 Fed. (2d) 512. On all but the primary issue we think respondent was in error. Decisions will be entered wider Rude 60.