## Daniel J. Fry, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 3689.   Promulgated March 30, 1945.

*Carl E. Davidson, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, for the respondent.

OPINION.

Mellott, *Judge*: The basic facts, shown at length in our findings, are not seriously in dispute. The operation of the two farms resulted in net income of $21,342.68. It is includible in petitioner's gross income unless the action taken by him "within the first 15 days" of 1941 relieves him from the tax. Nor do counsel for the parties disagree as to the fundamental legal principles. Both recognize that under *Lucas* v. *Earl*, 281 U. S. 111, "anticipatory arrangements and contracts, however skillfully devised," can not relieve the earner or producer of the income from tax upon it by attributing the fruits "to a different tree from that on which they grew." Cf. *Griffiths* v. *Commissioner*, 308 U. S. 355; *Gregory* v. *Helvering*, 293 U. S. 465; *Helvering* v. *Eubank*, 311 U. S. 122; and *Helvering* v. *Horst*, 311 U. S. 112. If, however, the income-producing property be assigned, the assignee, rather than the assignor, is taxable upon the income. *Blair* v. *Commissioner*, 300 U. S. 5; *Reinecke* v. *Smith*, 289 U. S. 172. Cf. *Harrison* v. *Schaffner*, 312 U. S. 579, and *Helvering* v. *Clifford*, 309 U. S. 331.

Petitioner did not have the assistance of a lawyer in drafting the assignments in January 1941. He stated that he had consulted with some representative of the Bureau of Internal Revenue and with an accountant, both of whom, it inferentially appears, advised him of

the principles to which reference has been made. The question which evolves, however, is the effect of what was done. Petitioner insists that the assignments "were legally sufficient to convey to the son and daughter * * * all of his interest in the * * * farm properties." Citing *American Savings Bank & Trust Co.* v. *Mafridge*, 60 Wash. 180; 110 Pac. 1015, and *Nelson* v. *Goodrich*, 159 Wash. 189; 292 Pac. 406, he contends that a writing was not even necessary, inasmuch as his interest in the 121-acre tract was a tenancy for years, while his interest in the other was a mere chose in action—an executory contract to purchase land.

*American Savings Bank & Trust Co.* v. *Mafridge* merely held that a competent party who had entered into a contract, based upon a sufficient consideration, to purchase a lease from the lessee of property could not avoid the contract upon the theory that it was a lease, invalid because not acknowledged. In *Nelson* v. *Goodrich* an assignment of an executory contract for the sale of real estate had been made to the grantee in a deed, who thereby had become entitled to receive the payments accruing under the contract. Default having been made under the contract of purchase, suit was instituted by the assignee. The issue before the Supreme Court of Washington was whether the lower court had erred in sustaining a demurrer to the answer in which recoupment had been sought because of violation of certain duties devolving upon the prior titleholder. The court pointed out that "since what was assigned was a chose in action only * * * the assignee stands in the shoes of his assignor." It concluded that the lower court had erred in sustaining the demurrer. The cited cases furnish slight assistance or guidance in resolving the present question. Here the assignees were children, not *sui juris*, who signed nothing. One was too young even to be told what was happening or contemplated. Moreover, each contract required petitioner to perform specified obligations, which he could not escape by the simple expediency of assigning the contracts to his children. Each contract contained an express prohibition against assignment unless the written consent of the other party to it were secured. No such consent was given. Neither assignment was acknowledged and hence could not be recorded. If delivery was actually made, it has not been shown; nor is there any evidence of an acceptance by either child, especially the boy. Thus it is difficult to find upon this record that anything passed from petitioner merely by the signing of the two informal documents.

Passing the questions suggested in the preceding paragraph, we next examine the facts for evidence of a bona fide gift, asserted by petitioner to have been made. The use of the expressions "sell," "good and other *valuable* considerations," etc., belie the idea of a gift.

Keeping in mind the fact that the documents were prepared by one unlearned in the law, however, no undue emphasis should be placed upon the terms used. But if a gift was made, what evidence is available? The property had a substantial value, although no evidence was adduced to prove the amount. The 378 acres had been planted largely to peppermint and a crop, which during the next twelve months yielded a net income of more than $21,000, was already in existence. Capitalizing the probable earnings, it would seem to be clear that the right to receive them would have a value greatly in excess of $8,000; yet no gift tax or donee information returns were filed. (Ch. 4, I. R. C., sec. 1,000, et seq.) Apparently, also, petitioner had paid more than $20,000 upon the purchase of the 257-acre tract—a circumstance entitled to some consideration in appraising the value of the property transferred.

The essential elements of a gift *inter vivos* have oft been stated. In *Francis E. Tower*, 3 T. C. 396, 402, they were said to be:

(1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee. [See *Edson* v. *Lucas*, 40 Fed. (2d) 398, and authorities there cited.]

Many of the elements are lacking in the instant case, especially (3) and (4).

The returns filed on behalf of the children indicate that they were in partnership. If an information return for the partnership was filed, it has not been shown in evidence. Manifestly no real partnership existed. The children were incapable of entering into such a relationship. Moreover, the evidence shows that they were consulted about nothing. When petitioner deemed it advisable to expend nearly $1,800 in the taxable year for new irrigation equipment for the two farms, he did so. All of the details of the enterprise—the hiring of horses and labor, the planting, harvesting, processing, and selling of the crops—were looked after by petitioner just as he had done in the past. As he expressed it, there was not a great deal of difference in the handling of the property after the assignments were executed. "There was no reason why there should be. The bookkeeping was different; the accounting was different." Apparently that was the only difference.

In support of his determination respondent suggests there was "merely a pretended reallocation of farm income within a family

group" and therefore that the rationale of *Helvering* v. *Clifford, supra,* is applicable. The suggestion is not without merit. Cf. *A. R. Losh,* 1 T. C. 1019; affd., *Losh* v. *Commissioner,* 145 Fed. (2d) 456. "It is hard to imagine that \* \* \* [petitioner] felt himself the poorer after \* \* \* [the assignments] had been executed or, if he did, that it had any rational foundation in fact." *Helvering* v. *Clifford, supra.* Taxation is concerned "with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers,* 281 U. S. 376. "\* \* \* [I]t makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. *Gregory* v. *Helvering,* 293 U. S. 465." *Griffiths* v. *Helvering, supra.* It is clear that petitioner had as much command over the property and the income from it after the execution of the assignments as he had before. Thus, even if it be assumed, contrary to what we believe to be the fact, that a gift was actually made to the children in the taxable year, petitioner retained such substantial control over the property and the income that we can not say the Government erred in stating it as his income.

Petitioner places some reliance upon a group of cases in which it was held that a parent was not required to include in his gross income the profit resulting from operating brokerage accounts in the name of his minor child or children. *Emil Frunk,* 27 B. T. A. 1158; *Herbert L. Dillon,* 32 B. T. A. 1254; *H. C. Priester,* 33 B. T. A. 230. See, however, *Harry F. Canelo,* 41 B. T. A. 713, (appeal, C. C. A., 9th Cir., dismissed) where the duties incumbent upon a parent under such circumstances are discussed at length. All of the cases were decided prior to the *Clifford, Griffiths, Eubank,* and *Horst* cases, cited at the beginning of this opinion. Whether they have lost any of their value as precedents need not now be decided. Each is distinguishable from the instant case upon its facts. The distinguishing characteristics may be gleaned from the following excerpts from the *Priester* case:

In the present case the evidence is that petitioner declared to all who might be interested that the accounts were established for the benefit of his children. It is his testimony that that was the purpose of the accounts and in this he is corroborated by his wife, the office manager of the firm, and the accountant of the firm. \* \* \* The statements made by petitioner to all who had any connection with the accounts, his scrupulous maintenance of them as separate accounts in the names of the beneficiaries, and his representations of trusteeship in Federal tax returns, in our opinion, amount to the "unequivocal acts or declarations" which under the decisions above cited will convert what would otherwise be a tentative trust into a present trust.

None of the circumstances stressed in the above quotation is present here. Petitioner made no declarations from which it could be determined that the farm account was being handled for the benefit of his

children. No showing has been made that the manager or employees of the Washington farms, the representatives of the owner of the 257-acre tract, the agents of the lessor of the other tract, bankers, or anyone else had any knowledge of the execution of the documents. Petitioner made no representation of trusteeship in Federal tax returns, nor did he scrupulously maintain separate bank accounts for his children. The funds were all deposited in his individual account. True, he kept records showing the receipts and disbursements from the two farms; but that is frequently done by one desiring to compare the profitableness of separate operations. Petitioner does not urge that under the present facts there were such "unequivocal acts and declarations" as to transmute a tentative trust into a present one. His theory is that a completed gift of the property was made. This we believe, has not been proved.

The respondent committed no error in determining the deficienc; in tax. ˙

*Decision will be entered for the respondeni*